**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:12-cv-304 |
| | ) | |
| UNITED STATES STEEL CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court on the Motion to Alter Phase 2 Deposition Limits [DE 84] filed by the plaintiffs on February 13, 2014. For the following reasons, the motion is **GRANTED**.

*Background*

The plaintiffs filed their complaint on August 1, 2012, alleging that the defendant, United States Steel Corporation, violated various environmental laws at three of its integrated iron and steel mills. For purposes of discovery, this action was divided into three phases— one for each mill. The second phase, and the subject of this motion, involves the Great Lakes Works plant located in Michigan. During the parties' planning meeting, the plaintiffs requested the right to take twenty depositions during this phase of discovery. USS proposed five depositions during each phase in addition to five "floating depositions" that could be used during any of the three phases. At the preliminary pretrial conference, the court directed that the parties could take five depositions at each phase.

1

USS turned over its initial disclosures following the preliminary pretrial conference and identified nine individuals with discoverable information whom USS might use to support its defenses in phase 2. Three of the individuals identified work in the corporate office and have knowledge concerning the regulatory compliance, permits, environmental obligations, notices of violations, and communications with the government, while the other six have or had jobs at the mill and have information concerning U.S. Steel's operations at Great Lakes Works, including work practices, recordkeeping, reporting, inspections, maintenance, emissions monitoring, and environmental controls. The plaintiffs now move the court for leave to conduct ten depositions during phase 2 of discovery, arguing that it is necessary to depose the nine individuals whom USS identified as having relevant information. USS opposes the plaintiffs' motion.

*Discussion*

The Federal Rules presumptively limit the number of depositions taken by a party to ten. **Federal Rule of Civil Procedure 30(a)(2)(A)**. *See also* ***Bell v. Fowler***, 99 F.3d 262, 271 (8th Cir.1996). The rule provides for expanding this limit only upon leave of court and "consistent with the principles stated in Rule 26(b)(2)" which provides a gauge for altering the scope of discovery. Rule 26(b)(2) also requires the court to address whether the discovery is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive." The court also must consider the burden of the proposed discovery, including the "needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." **Rule 26(b)(2)(C).** *See also* ***Barrow v. Greenville Independent School District***, 202 F.R.D. 480, 482 (N.D.Tex. 2001); ***Pedraza v. Holiday***

*Housewares, Inc*., 203 F.R.D. 40, 42 (D.Mass. 2001).

In justifying additional depositions, a party must demonstrate a particularized need for the total number of depositions it seeks to take, including those already taken. *See **Barrow***, 202 F.R.D. at 483 ("If this approach were condoned, a party could indirectly circumvent the cap on depositions by exhausting the maximum allotted number to take those that she could not justify under the Rule 26(b)(2) standards, and then seeking leave to exceed the limit in order to take depositions that she could substantiate."). *See also **Duncan v. Paragon Publishing, Inc***., 204 F.R.D. 127, 128 (S.D.Ind. 2001).

The plaintiffs wish to increase the number of depositions permitted during phase two of discovery from five to ten. The plaintiffs explain that the discovery limits were determined prior to the initial disclosures. In the initial disclosures, USS identified nine people with discoverable information whom the plaintiffs now wish to depose. Given the complexity of the case, the number of facilities involved, and the number of violations alleged, the plaintiffs sought a limit of twenty depositions per phase during the parties' planning meeting. The defendants took the position that discovery should be limited to five depositions per phase with five "floating depositions" that could be used at any phase. Instead, the court limited the depositions to five per phase and did not adopt the proposal to allow five floating depositions. Because more depositions were contemplated by the parties, the plaintiffs argue that the limits should be increased. The plaintiffs further argue that if they had filed a complaint against each of the defendants separately, they would have been entitled to conduct ten depositions per facility, and that they should not be further limited because they filed one lawsuit against all of the defendants.

USS opposes the plaintiffs' motion, arguing that the plaintiffs have not made an individualized showing that the depositions are necessary. USS believes that the plaintiffs should conduct some of the depositions and then determine whether further discovery is warranted. The plaintiffs oppose this idea, explaining that this arrangement would slow down the pace of discovery and may cause the phase 2 discovery to exceed its June 20, 2014 deadline.

The court agrees that a delay in resolving this issue likely would affect the discovery deadline and slow down the pace of the litigation. Although USS argues that the plaintiffs' case primarily should be based off of documents, rendering the depositions unnecessary, the plaintiffs have responded that the depositions are relevant to the defenses USS raised. Specifically, USS stated that some of the opacity exceedances were caused by malfunctions, that corrective action was taken to address other violations, and that it can demonstrate compliance in almost all occasions even though it cannot locate records documenting compliance. It is highly unlikely that a single person has personal knowledge about each claimed malfunction and USS's respective defense. This is particularly true because the complaint alleges more than 100 violations of opacity limits applicable to five different operating areas within Great Lakes Works. Of the people the plaintiffs wish to depose, three work in the corporate office and have knowledge concerning the regulatory compliance, permits, environmental obligations, notices of violations, and communications with the government, while the other six have or had jobs at the mill and have information concerning U.S. Steel's operations at Great Lakes Works, including work practices, recordkeeping, reporting, inspections, maintenance, emissions monitoring, and environmental controls.

In light of the various claims and defenses, the court finds that the plaintiffs have

4

demonstrated why the additional depositions are necessary. The claims were spread out across five different operating areas at Great Lakes Works, and various individuals have knowledge of the operations within each division of the plant, while others will testify about what occurred in the corporate office. For this reason, the proposed depositions do not appear to seek duplicative information, as the individuals whose depositions are sought have knowledge of different working areas and processes. Moreover, the parties themselves previously had agreed to more depositions than determined at the preliminary pre-trial conference, and USS has acknowledged that no single employee has knowledge of all the issues involved in phase 2.

Taking into consideration the burden of the proposed discovery, the plaintiffs have demonstrated that the additional depositions are warranted. For the reasons stated above, the plaintiffs have demonstrated that this case is complex and that the depositions are necessary to understand USS's defense. Given the number of violations that resulted from conduct in different departments of the plant, the additional depositions are necessary to understand USS's processes and reactions and would have been permitted if each case was filed separately. Furthermore, the environmental violations concern the public at large, and for this reason prompt resolution is desirable. The parties do not lack the resources to conduct the discovery at this time. Because the burden is minimal in light of the complexity of the case and the depositions do not seek duplicative information, but rather request the depositions of employees who were active in different aspects of USS's defenses, the court finds that the plaintiffs have satisfied their burden to show that the additional depositions are warranted.

Based on the foregoing reasons, the plaintiffs' Motion to Alter Phase 2 Deposition Limits is **GRANTED.**

ENTERED this 17th day of April, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge