**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **2:12-cv-00304** |
| | ) | |
| UNITED STATES STEEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**OPINION AND ORDER**</u>

The Environmental Protection Agency and three similar state agencies from Indiana,

Michigan and Illinois filed a complaint against U.S. Steel Corporation alleging violations of the

Clean Air Act relating to plants U.S. Steel operates in those three states. In Count One of its

complaint, the EPA sought both damages and an injunction for alleged violations of the Clean

Air Act relating to construction work done at U.S. Steel's Gary, Indiana plant in 1990. U.S. Steel

moved to dismiss on the basis that the claims were initiated well past the five-year statute of

limitations period that U.S. Steel says applies to the alleged violations. Shortly before I filed my

opinion, the Seventh Circuit issued an opinion in *United States v. Midwest Generation, LLC*, 720

F.3d 644 (7th Cir. 2013), dealing with some of the same issues I face in this case, and I applied

that ruling as I interpreted it. In my original Opinion, I agreed with U.S. Steel that the statute of

limitations barred any claim for damages relating to those long ago events. However, I agreed

with the government that the statute of limitations didn't bar injunctive claims. (Docket Entry

54.)

U.S. Steel now asks me to reconsider the latter ruling – the one relating to the request for

an injunction – based on its interpretation of *Midwest Generation.* After closely reading *Midwest*

*Generation* I am now persuaded that my earlier ruling was wrong, and that the request for an injunction based on a claimed permit violation from 24 years ago cannot stand under *Midwest Generation.* So for the following reasons I will **GRANT** the Motion to Reconsider and **DISMISS** the claim for injunctive relief contained in Claim One.

## BACKGROUND

I won't rehash everything in my initial opinion on the motion to dismiss. I will include only the facts necessary to this opinion and the application of *Midwest Generation* to the issue at hand – whether the government can obtain an injunction against U.S. Steel for commencing construction in 1990 on a major modification to its facility without first obtaining certain permits. The plaintiffs in this case are both federal and state environmental agencies, but for ease of reference I will refer to them collectively as the EPA.

In 1990, U.S. Steel performed a "reline" of its No. 4 furnace at its Gary Works facility in Gary, Indiana. A reline is the process whereby the furnace is completely shut down and the interior lining is updated. U.S. Steel didn't get a construction permit for the reline – it argues a permit wasn't necessary – and now more than twenty years later the EPA says it should have.

In order to understand the issues in this case, one must understand the permitting process under the regulatory scheme established by the Clean Air Act (the "CAA"). There are two types of permits: construction permits and operating permits. *Midwest Generation*, 720 F.3d at 645. Both types of permits are at issue in this case.  But for present purposes, because U.S. Steel's

Motion to Dismiss is only attacking Count One (and a portion of Count Three) of the complaint, only the failure to obtain a construction permit is presently before the Court.[1]

The construction permitting program emerged from the 1977 amendments to the CAA which required all new sources of air pollution – factories, power plants, refineries, etc. – to undergo a "New Source Review" ("NSR"). Under the NSR process, all post-1977 sources are required to meet various emission limits for pollutants. One might ask how this applies to the century-old Gary Works plant. The answer is that it might not.  This is because plants built prior to 1977 are grandfathered in, meaning they need not abide by the 1977 amendments. But if the owners of the plant make a "major modification" to it, then the 1977 amendments do kick in. Whether the 1990 reline of the No. 4 furnace was a "major modification" under the CAA is a bone of contention in this case: EPA says it was major, U.S. Steel disagrees. But that issue is not before me today. Instead, at this stage, I will accept as true the EPA's allegation that the reline was a major modification.

NSR consists of two programs – prevention of significant deterioration in air quality ("PSD") and non-attainment with air quality standards ("NA/NSR").  Both of those programs are at issue in this case. The EPA's first claim in this case alleges construction permit violations

---

[1] I note that the EPA's third claim addresses CAA Title V operations permit violations at the Gary Works. The EPA alleges that U.S. Steel's 1996 Title V permit application was deficient, so the government wasn't able to fully and fairly evaluate the facility and assess the proper requirements. (Compl. at ¶¶ 125-27.) The parties haven't raised or addressed the issue of my jurisdiction over this claim. Without getting into the issue in full here, before the parties have briefed it, I think exercising jurisdiction might be problematic because "[a]s the [Third,] Seventh, Eighth, and Ninth Circuits have held, Title V channels challenges to applications and permits into an administrative review process that is reviewable exclusively by the courts of appeals, not collaterally in civil or criminal enforcement actions in the district courts." *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 296-97 (3d Cir. 2013). I will have to take up that issue before the disposition of this case regardless of whether the parties eventually address it.

under both 42 U.S.C. § 7475(a) (PSD violations) and 42 U.S.C. § 7503 (NA/NSR violations). *See* DE 1 at 21.

A bit of clarification is necessary at this point. In *Midwest Generation,* the Seventh Circuit only addressed § 7475, holding that the EPA couldn't sue over preconstruction PSD permitting failures a decade after construction was complete and thus a decade after the violation occurred. However, *Midwest Generation* didn't address § 7503. The parties in this case don't distinguish between PSD and NA/NSR in their briefing, or between § 7475 and § 7503. It's not obvious that the two can be addressed together, so before I analyze the effect that *Midwest Generation* has on this case, that issue requires some discussion.

While § 7475 explicitly addresses only PSD preconstruction requirements and not operation of the facility, § 7503 addresses nonattainment plan permit requirements generally, addressing both construction and operation permits for areas with especially poor air quality that are designated as "nonattainment areas." However, the allegations for each of § 7475 and § 7503 in the EPA's Complaint against U.S. Steel in this case explicitly refer to U.S. Steel's "commencing a major modification without undergoing" the respective PSD and NSR review and permitting processes. (Compl. at ¶¶ 86, 87.) That is, the Complaint alleges that U.S. Steel violated § 7475(a) "by commencing a major modification without undergoing PSD review for major modifications, obtaining a PSD permit, and installing and operating [Best Available Control Technology] for control of the relevant air pollutants." (Compl. at ¶ 86.) It similarly alleges that U.S. Steel violated § 7503 "by commencing a major modification without undergoing NA NSR review for major modifications, obtaining an NA NSR permit, and installing and operating [Lowest Achievable Emission Rate] for control of such air pollutants."

4

(Compl. at ¶ 87.)  In other words, the allegations under §§ 7475 and 7503 mirror one another, and both are based on preconstruction permitting violations ("commencing a major modification"), not operation violations. Therefore, the Seventh Circuit's logic in *Midwest Generation*, which relies on the preconstruction nature of the allegations under § 7475, must also apply to the allegations under § 7503 as they are made in the EPA's First Claim against U.S. Steel. I therefore view the differences between the two sections as immaterial to U.S. Steel's motions to dismiss and to reconsider. So to simplify matters I'll just refer to the whole construction permitting process as "NSR."

Under the NSR program, the new source must obtain a preconstruction permit from the EPA, demonstrate that the construction will not increase emissions above a certain threshold, and show that facility operations are in continuous compliance with the best available control technology ("BACT"). The NSR permit then specifies what construction is allowed, what emission limits must be met, and how often the emissions source must be operated.

Most CAA permitting is actually done at the state level. The EPA establishes the basic requirements for the CAA, and states can then take those minimum thresholds and develop their own unique requirements and procedures in what is called a State Implementation Plan ("SIP"). Indiana has codified its SIP at Titles 325 and 326 of the Indiana Administrative Code. Indiana's SIP generally seems to mirror the federal requirements, including requirements that new sources must obtain a preconstruction NSR permit and install BACT.  In their briefing on the motion for reconsideration, the parties haven't made any arguments unique to Indiana's SIP.

U.S. Steel has asked me to reconsider my decision to deny its motion to dismiss with respect to injunctive relief for failure to get preconstruction permits for the 1990 Gary Works

reline. In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). I must accept all factual allegations as true and draw all reasonable inferences in the

complainant's favor, but I don't need to accept threadbare legal conclusions supported only by

purely conclusory statements. *See Iqbal*, 556 U.S. at 678. Although a plaintiff's failure to file a

case in a timely way is generally an affirmative defense, a plaintiff can plead himself out of court

by alleging facts that are sufficient to establish the  defense. *Hollander v. Brown*, 457 F.3d 688,

691 n.1 (7th Cir. 2006).

## DISCUSSION

Put simply, the EPA alleges that U.S. Steel undertook substantial modifications to its

Gary plant in 1990 without undergoing the necessary government review, obtaining modification

permits, and installing mechanisms for minimizing pollution that would have been required had

U.S. Steel sought regulatory review. The permit at issue in this claim is in the nature of a

building permit, a prerequisite to construction. It is separate from and in addition to operating

permits. U.S. Steel argues that the 1990 modification didn't require a building permit, so it didn't

seek one; again, that argument isn't before me at this stage of the case. But U.S. Steel also argues

that, even if the 1990 modification did require a construction or building permit, the EPA's

lawsuit comes way too late.

As I noted, I've already agreed with U.S. Steel that the applicable statute of limitations

period (five years, under 28 U.S.C. § 2462) applies to bar financial penalties for alleged

permitting violations from well over five years ago. The question I take up on reconsideration is whether injunctive relief is also barred at this point on the government's claim that U.S. Steel performed a plant modification that required permitting without going through the process. Upon further analysis of the Seventh Circuit's opinion in *United States v. Midwest Generation, LLC*, 720 F.3d 644 (7th Cir. 2013), I find that the opinion directly addresses the question here with respect to 42 U.S.C. § 7475, which was the code section at issue in *Midwest Generation*, and as such controls my decision. As noted above, while *Midwest Generation* does not directly address § 7503, the allegations in the first claim of the Complaint with respect to § 7503 mirror those under § 7475 in that both refer only to pre-construction permitting, so the logic of *Midwest Generation* applies equally to the § 7503 claim here.

The *Midwest Generation* opinion that controls here arose after the district court in that case dismissed several PSD claims brought under § 7475. *See United States v. Midwest Generation, LLC*, 694 F. Supp. 2d 999 (N.D. Ill. 2010); *United States v. Midwest Generation, LLC*, 781 F. Supp. 2d 677 (N.D. Ill. 2011). There, Commonwealth Edison owned the plants in question and modified them without seeking preconstruction permits or installing BACT, then sold them to Midwest Generation in 1999. Midwest Generation further modified one of the plants after the purchase. *Midwest Generation*, 694 F. Supp. 2d at 1001. The EPA didn't sue until 2009. After the district court dismissed several claims, the EPA amended its complaint to add ComEd as a defendant and to claim that Midwest Generation was liable as a successor pursuant to assumption of liability in the asset sale. Here is how the United States explained the dismissed claims in its opening appellate brief in *Midwest Generation*:

> [T]he district court issued an opinion dismissing nine of our
> ten PSD claims in their entirety—all but the one relating to the

modification of the Will County plant. *United States v. Midwest Generation*, LLC, 694 F. Supp. 2d 999 (N.D. Ill. 2010) (*Midwest I*). The court concluded that the PSD requirements in 42 U.S.C. § 7475 prohibit "the *construction* of a 'major emitting facility'" without a permit, but that "nothing in § 7475 prohibits the subsequent *operation* of such a facility without a permit." 694 F. Supp. 2d at 1004 (emphasis in original). It therefore held that a PSD violation "occurs at the time of construction and no later." *Id.* at 1008. . . .

[In later dismissing claims from the amended complaint,] [t]he court held first that the United States could not state any Clean Air Act claim against ComEd. Though it recognized that there was no time-bar on our claims for injunctive relief, the court held that it could not order ComEd to do anything to remedy its past violations because ComEd no longer owned the power plants. [*Midwest Generation*, 781 F. Supp. 2d] at 685. The court summarily rejected the United States' suggestions for retroactive injunctive relief against ComEd because the court held that any such relief would amount to a time-barred monetary penalty. *Id.* at 685.

The district court then rejected our claim that Midwest Gen had assumed ComEd's Clean Air Act liabilities in the Asset Sale Agreement.

So to summarize, the district court in *Midwest Generation* dismissed almost entirely the EPA's battery of PSD claims brought under § 7475: due to successor liability issues it dismissed entirely (damages and injunction requests) the claims stemming from modifications performed by the previous owner; it dismissed only the *damages* claim for the modification performed by the current owner, allowing the *injunction* request for the current owner's modification to proceed.

The EPA appealed the dismissal of its claims for damages and injunctive relief under § 7475, arguing that (1) Midwest Generation was responsible, as purchaser, for ComEd's violations, and that Midwest Generation itself violated PSD rules by operating the facilities without a PSD permit, and (2) ComEd was still liable for injunctive relief that could be enforced

by requiring ComEd to buy emissions allowances or to pay for upgrades on the facilities that
now belong to Midwest Generation.

The district court's decision in *Midwest Generation* was based largely on the sale of the
modified facilities, so the district court's reasoning is inapplicable to U.S. Steel's situation – U.S.
Steel performed the potentially problematic modifications and still owns and operates the Gary
Works today. However, the Seventh Circuit's opinion affirming the district court's dismissal of
both damages and injunction claims wasn't based on the sale.[2] In fact, the Seventh Circuit
specifically repudiated the relevance of the successor liability issue, writing that it need not
"worry about whether the sale had any effect on liability, and if so who would be responsible
today. *Midwest cannot be liable when its predecessor in interest would not have been liable had
it owned the plants continuously.*" *Midwest Generation*, 720 F.3d at 646 (emphasis added). The
Seventh Circuit's hypothetical in the italicized sentence directly addresses U.S. Steel's situation,
and requires me to hold that U.S. Steel is not liable even though it has owned the Gary Works
facility continuously from modification to present.

The Seventh Circuit seems to have reached this conclusion by applying a statute of
limitations to the EPA's injunction claims. It held that the government cannot seek injunctive
relief for alleged permitting violations that were committed and completed many years ago. I
missed that on my first read-through of *Midwest Generation* because the opinion doesn't
mention injunction directly, although on another read it is evident that the Seventh Circuit has

_____

[2]It is the appellate court's prerogative to affirm a district court's decision on a motion to
dismiss "on any ground that the record fairly supports and that appellee has not waived." *See,
e.g.*, *Bogie v. Rosenberg*, 705 F.3d 603, 614 n.2 (7th Cir. 2013) (quotation marks and citation
omitted.)

applied a five-year limitations period to the EPA's suit for injunction. The opinion says that "if someone had contested the decision within the statute of limitations (five years; *see* 28 U.S.C. § 2462), then Commonwealth Edison could have needed to undertake a further round of modifications to get the permit and might have had to  pay hefty penalties for the delay." *Midwest Generation*, 720 F.3d at 646. Requiring a company to do "a further round of modifications to get the permit" could only be done through injunctive relief.

The application of a limitations period in this situation is unusual: the CAA doesn't have its own limitations clause, so the relevant limitations period is a general one that applies to federal claims that fall within its ambit of relief:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462. An injunction is not a "civil fine, penalty, or forfeiture," so a plain reading of § 2462 wouldn't indicate that it applies here, as my original Opinion held. In its original motion, U.S. Steel argued that the limitations period should apply to injunctive relief under the concurrent remedy doctrine. Under that doctrine, when both legal and equitable relief are available concurrently, "equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy." *Cope v. Anderson*, 331 U.S. 461, 464 (1947) (citations omitted). But as I explained in my original Opinion, courts have uniformly held that the concurrent remedy doctrine doesn't apply to U.S. government enforcement suits. *See* DE 54 at 17-19. The same is true of the equitable defense of laches: it likewise doesn't apply to the

government. DE 54 at 24. *Midwest Generation* doesn't discuss the concurrent remedy doctrine or the equitable defense of laches and their inapplicability to the government. So, candidly, it is a little difficult to understand the basis for the statements in *Midwest Generation* that even claims for injunctions have to be brought within five years. But that is what *Midwest Generation* appears to mandate. And in a hierarchical system of courts, my job as a trial judge is to do as my superiors tell me.

So while the basis for applying a limitations period to the EPA's injunction claim under §§ 7475 and 7503 is thinly explained in *Midwest Generation*, upon reconsideration I do think that's the outcome required of me here. While at least one other circuit court has done a linguistic analysis of the relief available under the CAA and held that a CAA injunction "must be limited to ongoing violations," and isn't available for a completed violation, *U.S. v. EME Homer City Generation, L.P.*, 727 F.3d 274, 291-96 (3d Cir. 2013), *Midwest Generation* takes the time limitation approach. Perhaps *Midwest Generation* and *EME Homer* are really saying the same thing. That is, once construction has commenced and been completed there is nothing left to enjoin. But I cannot ignore what the Seventh Circuit expressly said in *Midwest Generation*, which is that "Commonwealth Edison needed permits before undertaking the modifications. . . . [But] this suit commenced . . . [after] at least double the five-year period of limitations." *Midwest Generation* at 646. I take this to mean that any action to enforce a construction permitting violation has to be brought within five years. All of which makes the claim in this case – coming more than 20 years after the construction permit violation – woefully tardy.

The Seventh Circuit also disagreed with the EPA's argument that there was no limitations issue because the violation was ongoing. The EPA argued that each day of operating

without having gotten a construction permit was a "continuing violation." But the Seventh Circuit made quick work of that argument, explaining that "[t]he violation is complete when construction commences without a permit in hand." *Id.* at 647. The Seventh Circuit refuted three possible theories of a "continuing violation" under the construction permit requirements. The omission is not a violation that continues to the present day through any of the three theories: (1) discrete, new violations each day the plant operates without having obtained a permit, (2) repeated acts that accumulate into one violation, or (3) continuing injury resulting from a completed violation. *Id.* at 646-47. In short, a construction permit violation only relates to construction; continued operation without having gotten a construction permit doesn't violate the construction permit requirements.

The Seventh Circuit also addressed the EPA's related argument about the defendant's failure to install BACT during the modification, and its resulting failure to use BACT in subsequent operations. One requirement of construction permits is that the modification include BACT to control and reduce emissions of the new (or modified) source. The EPA therefore claims that, by not including BACT, the defendant commits a construction permit violation for each day it operates without BACT. The Seventh Circuit agreed that *operating* without BACT might be a current violation of something, but is no longer one under the construction permit laws at issue in *Midwest Generation* or here. *Id.* at 647 ("If the owners ripped out or deactivated the best available control technology after finishing construction that would not violate § 7475 – though it might well violate some other statue, regulation, or implementation plan prescribing how polluters run their facilities.)

The EPA also argued that by violating specific NSR rules as described previously, defendants violate state law that prohibits operating out of compliance with federal rules. This argument for derivative liability also fails because the construction permit violation is no longer actionable. "[Section] 7475 deals with getting permission for construction, not with a plant's operations; it follows that [Defendant's] violations of § 7475 during the 1990s do not make its current operations a violation of federal law, so they do not derivatively violate [the SIP]." *Id.* at 648.

As I have noted, the Third Circuit addressed similar issues in the EPA's case against EME Homer City Generation, L.P. The Third Circuit's opinion is comprehensive and persuasive in its description and analysis of the CAA. The Third Circuit helpfully points out that dismissing claims for construction permit violations brought too late doesn't take the teeth out of the CAA. For example, there are criminal penalties for knowing violations of the CAA, and the CAA's Title V requires operating permits in addition to construction permits, so current violations won't be ignored. *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 280, 288 (3d Cir. 2013). As the other claims in the ongoing case against U.S. Steel demonstrate, U.S. Steel isn't off the hook just because the construction permit claim is dismissed.

**CONCLUSION**

For the reasons discussed above, I therefore **GRANT** U.S. Steel's Motion for Reconsideration (DE 56) regarding my Opinion and Order (DE 54) granting in part and denying in part U.S. Steel's Motion to Dismiss. (DE 14.) Upon reconsidering, I **GRANT** U.S. Steel's Motion to Dismiss (DE 14) with respect to the government's claims seeking injunction based on

13

U.S. Steel's alleged failure under the CAA's NSR and PSD programs to obtain permits for

modifications undertaken in the 1990s.

>**SO ORDERED**.

>**ENTERED: April 18, 2014**

/s/ Philip P. Simon_____
**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
