# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

UNITED STATES OF AMERICA, STATE OF ) 
INDIANA, MICHIGAN DEPARTMENT OF )
ENVIRONMENTAL QUALITY, and )
STATE OF ILLINOIS )
                                  )
          Plaintiffs, )
                                  )
      v.                             )    CAUSE NO. 2:12-CV-304-PPS-APR
                                  )
UNITED STATES STEEL CORPORATION, )
                                  )
          Defendant.            )

## <u>OPINION AND ORDER</u>

The parties to this long running environmental dispute seek the Court's approval

of a proposed consent decree that would end this litigation. [*See* DE 125-1; DE133.] The

Plaintiffs—the Environmental Protection Agency, the Michigan Department of

Environmental Quality, the State of Indiana, and the State of Illinois—all agree with the

proposed disposition, as does the defendant, United States Steel Corporation.

First, some background. U.S. Steel is headquartered in Pittsburgh and is a major

global iron and steel producer that manufactures steel sheet and tubular products. The

Plaintiffs filed this action on August 1, 2012, alleging that U.S. Steel violated the Clean

Air Act by exceeding opacity limits in the Clean Air Act's National Emissions Standards

for Hazardous Air Pollutants ("NESHAP") regulation, relevant State Implementation

Plans, and/or U.S. Steel's permits issued under Title V of the Act. Other claims alleged

violations of operations requirements in applicable Operations and Maintenance Plans,

the NESHAP regulations, relevant State Implementation Plans, and U.S. Steel's Title V

Permits. [DE 1.] In the Summer of 2014, after almost two years of hard-fought litigation,

the Court granted the parties' request for time to allow settlement discussions to take

place. [DE 93.]

After over two years of settlement discussions, and with the helpful assistance of

Magistrate Judge Andrew Rodovich, a proposed settlement was reached and a Notice

of Lodging of Consent Decree was filed on November 11, 2016. [DE 125.] The proposed

Consent Decree resolves the allegations in the Complaint filed under the Clean Air Act

and in the notices of violations referenced in the proposed Consent Decree. Consistent

with Department of Justice regulations (28 C.F.R. § 50.7), the government invited public

comment on the proposed Consent Decree for a period of thirty days before seeking

judicial approval. [DE 125 at 1.] The proposed Consent Decree was noticed in the

Federal Register. *See* 81 Fed. Reg. 86,014, 2016 WL 6947816 (Nov. 29, 2016). Copies of the

proposed Consent Decree were made available by mail and on a Department of Justice

Website: https://www.justice.gov/enrd/consent-decrees. *Id.* On December 29, 2016,

comments were received from three citizen groups in Michigan—the Detroiters

Working for Environmental Justice, the Great Lakes Environmental Law Center, and

the Southwest Detroit Environmental Vision—and Michigan State Representative

Stephanie Chang. [*See* DE 134-1; DE 134-2.] The government filed responses to those

comments along with its motion. [*See* DE 134-3; *see also* DE 134-4; DE 134-5.]

Under the proposed Consent Decree, U. S. Steel agrees to 1) undertake measures to reduce pollution at its three Midwest iron and steel manufacturing plants in Gary, Indiana (Gary Works Facility), Ecorse, Michigan (Great Lakes Works Facility), and Granite City, Illinois (Granite City Works Facility); 2) perform seven Supplemental Environmental Projects at a total cost of $1.9 million to protect human health and the environment in the communities affected by U. S. Steel's pollution; 3) expend at least $800,000 for a project to dispose of PCB-contaminated transformers at its Gary Works and Great Lakes Works Facilities; and 4) pay a $2.2 million civil penalty. [*See* DE 125-1.] Pursuant the proposed Consent Decree, the Court will retain jurisdiction over this case until termination of the Consent Decree for the purposes of resolving disputes under the Consent Decree or entering orders modifying the Consent Decree pursuant to Sections XIV and XX of the Consent Decree, or effectuating or enforcing compliance with the terms of the Consent Decree. [DE 125-1 at 63.]

The Court has considerable discretion in determining whether settlement is fair and reasonable. *Madison Cnty. Jail Inmates v. Thompson*, 773 F.2d 834, 845 (7th Cir. 1985). "A court's review of a consent decree is not a mechanical rubberstamp, but neither is it a de novo review." *United States v. Bayer Healthcare, LLC.*, No. 2:07-CV-304, 2007 WL 4224238, at *3 (N.D. Ind. Nov. 28, 2007) *(citing United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)). Instead, the court gives deference both to the agency and its work in fashioning the decree with the agreement of the other parties, as well as the federal policy encouraging settlement. *United States. v. George A. Whiting Paper Co.*, 644

F.3d 368, 372 (7th Cir. 2011). This especially is the case when there is transparency in negotiations that involved numerous parties with sharply conflicting interests represented by knowledgeable lawyers who have hammered out an agreement at arm's length. *Cannons Eng'g Corp.*, 899 F.2d at 84. "The relevant standard, after all, is not whether the settlement is one which the court itself might have fashioned, or considers as ideal." *Id.* Rather, the consent decree must be fair, reasonable, and faithful to the objectives of the governing statute. *See George A. Whiting Paper Co.*, 644 F.3d at 372.

It is through this lens that I review the proposed Consent Decree and the related filings, including the comments submitted by three Michigan citizen groups and State Representative Chang and the government's responses to those comments. I find that the proposed Consent Decree is procedurally and substantively fair. Looking at its procedural history, the proposed Consent Decree is the result of several years of arms-length negotiations that were conducted in manifest good-faith. Furthermore, the proposed Consent Decree was made available for public comment and the comments that were received were addressed in turn by the government.

The proposed Consent Decree is substantively fair because it holds U.S. Steel accountable for its alleged non-compliance at the three facilities at issue. The proposed Consent Decree contains a comprehensive array of injunctive relief that will address the fundamental causes of U. S. Steel's alleged violations and will help to prevent similar non-compliance at the three facilities in the future. The proposed Consent Decree also contains provisions for a substantial civil penalty for U. S. Steel's past alleged violations;

provisions for seven SEPs to further reduce air pollution in the surrounding areas of the

three plants, benefitting the communities in or near those areas most affected by U. S.

Steel's pollution; and provisions for a project intended to reduce the environmental

hazards (namely, PCBs) present in transformers at U. S. Steel's facilities. Further, under

the proposed Consent Decree, U. S. Steel is subject to a stringent set of stipulated

penalties that hold it accountable for its future performance. In addition, the settlement

avoids the need for litigation, which in environmental cases tends to be complex,

lengthy, and expensive for all parties. There is no opposition to the settlement among

the affected parties, and the opinion of their competent counsel is in favor of the

proposed Consent Decree. In sum, all known information points to a consent decree

with terms that are substantively fair.

I find that the proposed Consent Decree also is reasonable. The reasonableness

requirement is "a multifaceted exercise" that tends to focus on the agreement's

effectiveness, the extent to which it satisfactorily compensates the public for the actual

(and anticipated) costs of remedial and response measures, and the relative strengths of

the parties' litigating positions. *Cannons Eng'g Corp*s, 899 F.2d at 89-90. The proposed

Consent Decree appears to be reasonable for many of the reasons relating to substantive

fairness. It holds U.S. Steel accountable for its alleged non-compliance at the three

facilities at issue and includes not only penalties and remedies for alleged past

violations, but also SEPs to better the community in the present and future.

Furthermore, the proposed Consent Decree holds U.S. Steel accountable for its future

performance through a stringent set of stipulated penalties. The proposed Consent

Decree's enhanced monitoring and reporting requirements will improve the accuracy of

information about the nature and extent of U.S. Steel's compliance with the Clean Air

Act and other applicable laws and permits. All of these measures will help clean the

environment and further the goals of the Clean Air Act.

Finally, I find that the proposed Consent Decree is consistent with applicable law

and the public interest. Entry of the proposed Consent Decree serves the public interest

by providing environmental benefits more quickly and at less costs than could be

achieved through litigation. The parties have been litigating this action for over four

years and it took them over two years to reach this settlement. The only likely

alternative to the proposed Consent Decree would be more complex and potentially

protracted litigation that would expend limited governmental and judicial resources,

which is a risky proposition with uncertain results, especially given the history of this

action. Furthermore, the injunctive relief required by the proposed Consent Decree,

with the anticipated consequent emissions reductions, is consistent with the primary

purpose of the Clean Air Act, to "protect and enhance the quality of the Nation's air

resources so as to promote the public health and welfare and the productive capacity of

its population." *See* 42 U.S.C. § 7401(b)(1).

I acknowledge and am sympathetic to the concerns reflected in the comments of

the Michigan citizen groups and Representative Stephanie Chang regarding additional

steps and changes to the proposed Consent Decree that they would like in order to

protect the health of the public and the environment. While I agree that several of the changes advocated by the commenters would be desirable in the abstract and potentially go further to achieve the commenters goals than what is proposed in the Consent Decree, I do not find that the absence of the suggested changes requires me to deny the United States' Unopposed Motion to Enter Proposed Consent Decree.

Could the agreement be different? Of course. Could it demand more from U.S. Steel by way of a fine, for example? Again, of course it could. But making such a demand may have caused U.S. Steel to walk away from the bargaining table and set the parties on a course of protracted litigation. This is to say that there is no single fair and reasonable resolution, but rather a range of them. And, in my judgment, the Consent Decree proposed in this case is plainly within that range.

**ACCORDINGLY:**

The United States' Unopposed Motion to Enter Proposed Consent Decree is **GRANTED** [DE 133] and via this Opinion and Order and my signature of page 66 of the Proposed Consent Decree, the Consent Decree is hereby approved, signed, and entered as a final judgment in this matter.

**SO ORDERED**.

ENTERED: March 30, 2017.

s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**